**ARTHUR S. LANGENDERFER, INC., et al., Plaintiffs,**

**v.**

**S.E. JOHNSON COMPANY, et al., Defendants.**

**No. C 76–425.**

United States District Court, N.D. Ohio, W.D.

Aug. 13, 1987.

---

James Porter, Cleveland, Ohio, for plaintiffs.

Neal Rains, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

JOHN W. POTTER, District Judge:

This matter is before the Court on plaintiffs' application for injunctive relief, defendants' opposition, plaintiffs' reply, defendants' opposition to plaintiffs' proposed amendment and defendants' supplemental opposition. On June 2, 1987, the Court heard oral argument on plaintiffs' application for injunctive relief.

This case is a private antitrust case which was tried to a jury commencing on August 14, 1986 and concluding on October 1, 1986. On October 1, 1986, the jury returned a unanimous verdict for plaintiffs against defendants. The jury unanimously determined that defendants had violated the antitrust laws by monopolizing and attempting to monopolize the bidding on and performing of asphalt paving work on Ohio Turnpike (OTC) and Ohio Department of Transportation (ODOT) highways in a thirteen county area in northwestern Ohio. The jury awarded plaintiffs damages totalling $2,475,000.00. On October 2, 1986, the Court trebled the actual damages and entered judgment of $7,425,000.00.

Section 16 of the Clayton Act, 15 U.S.C. § 26, gives a private party the right to seek injunctive relief in an antitrust action. Section 16 provides in part that

[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, ... when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equi-

ty, under the rules governing such proceedings.

15 U.S.C. § 26 (Supp.1987).

The purposes of this section are "(1) putting an end to illegal conduct, (2) depriving violators of the benefits of their illegal conduct, and (3) restoring competition in the marketplace." *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 729 F.2d 1050, 1059 (6th Cir.), *cert. denied* 469 U.S. 1036, 105 S.Ct. 510, 83 L.Ed.2d 401 (1984) (quoting *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir.1976). In *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), the Court held that "the purpose of giving private parties treble-damages and injunctive remedies was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws." *Id.* at 131, 89 S.Ct. at 1580. Therefore, upon a demonstration of "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur," a plaintiff is entitled to injunctive relief. *Id.* at 130, 89 S.Ct. at 1580. This Court determines that, judged by this standard and the record, an injunction is warranted.

■ Plaintiffs and defendants have submitted proposed injunctions for the Court's consideration. Plaintiffs request injunctive relief which would prevent defendants from bidding or supplying materials on every other asphalt paving contract let by ODOT, OTC or any local governmental unit in northwestern Ohio. The Court determines that this relief is not in the public interest. Furthermore, this type of relief may result in less competition thereby resulting in higher prices.

■ Plaintiffs seek injunctive relief which would prohibit defendants from acquiring any interest in or control of limestone quarries, and/or gravel pits, asphaltic concrete hot mix plants, asphaltic concrete producers, asphalt paving contractors, or bridge building contractors. The evidence established that bridge building contractors is a separate market. Further-

more, there was no evidence that defendants monopolized the bridge construction market. However, prohibition of the acquisition, except those pertaining to bridge building contractors, is warranted. Therefore, the Court determines that an injunction against future acquisitions is necessary to promote free competition and to remedy defendants' continuing violations of the antitrust laws.

Also, plaintiffs seek injunctive relief requiring defendants to charge the same price for limestone and sand at their quarries in Toledo as they do at their quarries outside of the Toledo area. Since prices in Toledo are competitive, rural prices are distinct and legally variable from Toledo prices, and the evidence at trial does not support this request, this request is contrary to the purpose of the antitrust laws to restore competition. *Langenderfer*, 729 F.2d at 1059.

Plaintiffs seek injunctive relief prohibiting defendants from refusing to sell stone, sand or asphaltic concrete to plaintiffs or other producers when defendants have the product available for themselves. The Court determines that upon the evidence presented at trial this type of injunctive relief is not warranted.

Plaintiffs seek to have defendants sell its products to third parties and plaintiffs at the same prices defendants sell intracompany. Upon the precedent of *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 218 (6th Cir.1985) and prior order of this Court, intracorporation sales are of no real competitive consequence.

■ Plaintiffs request injunctive relief against certain anticompetitive practices such as charging discriminatory prices, tying sales of asphaltic concrete to purchasers of stone or sand and intimidating or coercing plaintiffs from bidding on highway construction work or from building their own asphalt plants. In an effort to put an end to illegal conduct, deprive defendants of any benefits derived from the illegal conduct and to effectively restore competition to the marketplace, this Court determines these types of injunctive relief

are necessary. However, the Court does not agree with plaintiffs' contentions requiring the circulation of this injunction to actual or potential customers, and compilation of annual list of public paving jobs bid on by defendants to be distributed to the Court, plaintiffs and plaintiffs' counsel. The Court determines that these methods are not effectively designed to ensure free competition in this marketplace and therefore they are unnecessary.

Therefore, for the foregoing reasons, good cause appearing, it is ORDERED as follows:

I

This Court has jurisdiction of the subject matter of this action and of the parties hereto and venue as to all defendants is proper in this district.

II

As used in this order, the term:

a. "Person" means any individual, corporation, partnership, firm, association, or other business or legal entity;

b. "Asphaltic concrete" means a mixture of limestone, sand, liquid asphalt and other additives;

c. "Asphaltic concrete producers" are those persons who operate one or more hot mix plants at which asphaltic concrete is mixed, processed and produced;

d. "Asphalt paving contractors" are those persons who purchase or obtain asphaltic concrete from hot mix plants and engage in the business of building, laying or applying products to highways and roads;

e. "Northwestern Ohio" means that geographical area comprising the thirteen counties of Williams, Defiance, Paulding, Fulton, Henry, Putnam, Lucas, Wood, Hancock, Ottawa, Sandusky, Seneca and Wayandot.

III

This order applies to each of the corporate defendants, their officers, directors, agents, employees, subsidiaries, successors and assigns, and to all other persons in

active concert or participation with any of them who shall have received actual notice of this order by personal service or otherwise.

## IV

Each defendant is enjoined and restrained from, directly or indirectly:

(a) acquiring any interest in or control of limestone quarries, sand and/or gravel pits, asphaltic concrete hot mix plants, asphaltic concrete producers, or asphaltic paving contractors, who have offices or plants located in northwestern Ohio, within five (5) years from the date hereof without the prior approval of the Court and upon notice to plaintiffs;

(b) quoting or charging plaintiffs or other asphaltic concrete producers prices for asphaltic concrete, stone or sand different from those quoted or charged from the same location for similar quantities to other, unrelated asphaltic concrete producers or asphalt paving contractors for the same project; provided, however, that nothing herein shall prevent defendants from meeting competition;

(c) refusing or threatening to refuse to sell stone, sand or asphaltic concrete to plaintiffs, asphaltic concrete producers or asphalt paving contractors when defendants have such materials available for sale at the same location to other, unrelated customers; provided, however, that nothing herein shall require defendants to sell such materials to plaintiffs when such materials are needed to satisfy defendants' own requirements or to fulfill existing commitments to other customers;

(d) withholding or refusing credit to plaintiffs or other customers under criteria different from those criteria governing credit extension and revocation to other asphalt paving producers or asphalt paving contractors; provided, however, that nothing herein shall require defendants to extend credit to any customer that does not satisfy those criteria;

(e) tying sales of asphaltic concrete in any manner to purchases of stone or sand by customers, or, tying sales of stone or sand to requirements or conditions that customers purchase all or any portion of their asphaltic concrete needs from defendants' facilities;

(f) intimidating or coercing plaintiffs, asphaltic concrete producers or asphalt paving contractors in any manner from building their own asphalt plants, or threatening to run them out of business, withhold stone or sand supplies, in the event they construct asphaltic concrete hot mix plants;

g. intimidating or coercing plaintiffs, or other asphalt paving contractors or competitors from bidding on certain kinds of highway construction work or in certain geographical areas.

## V

Jurisdiction is retained by this Court for the purposes of enabling any of the parties to this order to apply to this Court at any time for such further orders or directions as may be necessary or appropriate for the construction or carrying out of this order, for the modification of any of the provisions hereof, for the enforcement of compliance herewith, and for the punishment of any violation hereof.

## VI

This order shall terminate five (5) years from the date of this entry.